UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES E. TOMLINSON and
DARLENE TOMLINSON,
his wife,

        Plaintiffs,

v.

WILLIAM J. LANDERS,

        Defendant.
_____/

CASE NO. 3:07-cv-1180-J-TEM

## ORDER AND OPINION

### I. Procedural Posture

This matter is before the Court on Defendant William J. Landers' ("Defendant") Motion(s) to Enforce Settlement and for Dismissal (Docs. #24, #26, Motion to Enforce Settlement),[1] Plaintiffs' response in opposition thereto (Doc. #29), Defendant's Amended Motion to Amend Affirmative Defenses (Doc. #38, Motion to Amend), and Plaintiffs' response in opposition to Defendant's Motion to Amend (Doc. #43).

In the Motion to Enforce Settlement (Doc. #26), Defendant seeks to enforce an alleged settlement agreement between Defendant and Plaintiffs, James E. Tomlinson and his wife Darlene Tomlinson (collectively "Plaintiffs"). Upon review of the record, the Court

---

[1]Defendant filed his first motion to enforce settlement and for dismissal (Doc. #24), which is duplicative of the second motion, Document #26. The first motion to enforce settlement and for dismissal (Doc. #24) contains exhibits that are not contained within Document #26. Therefore, for the purpose of this Order and Opinion, the Court will consider both motions in combination. Although the Court will primarily refer to Document #26 throughout this Order and Opinion since Plaintiffs only filed a response to Document #26, the Court will nevertheless cite to the various exhibit(s) of each respective document, as necessary.

1

found the issues addressed by the parties were fully briefed and determined oral argument would not benefit the Court in making its determinations. Accordingly, the Court has decided the matter on the written record. For the reasons set out herein, Defendant's Motion to Enforce Settlement (Doc. #26) shall be denied. Consequently, Defendant's Motion to Amend (Doc. #38) shall be denied as futile.[2]

## II. Background Facts

On February 24, 2007, Plaintiff James Tomlinson and Defendant were involved in an automobile accident (Doc. #1 at 2). On June 20, 2007, Plaintiffs' attorney wrote a letter to Defendant's insurer, Millers Classified Insurance Company ("MCIC"), demanding Defendant's policy limits of $100,000 in order to settle the claim for bodily injury resulting from the accident at issue (Doc. #24-2). On June 21, 2007, Plaintiffs' insurance carrier, Auto-Owners Insurance ("Auto-Owners"), paid Plaintiffs $50,000 for Plaintiff James Tomlinson's injuries and indicated that Auto-Owners would waive its subrogation rights against Defendant and MCIC (Doc. #29 at 11, Exhibit 2).

Approximately five months later, on November 14, 2007, Plaintiffs' attorney wrote MCIC another letter, informing MCIC of Auto-Owners' payment to Plaintiffs (Doc. #29 at 12-13, Exhibit 3). In said letter, Plaintiffs' attorney indicated that Plaintiffs would consider MCIC was acting in bad faith unless $100,000 was tendered to Plaintiffs within ten days of the date of the letter (Doc. #29 at 12-13, Exhibit 3). Six days later, on November 20, 2007, MCIC tendered a check for $100,000, made payable to Plaintiffs, their attorney, and to Medicare (Doc. #29 at 15-16, Exhibit 5). The check stub provided, "payment will clear

---

[2]As discussed *infra*, the Court's decision to deny as futile Defendant's Motion to Amend (Doc. #38) is predicated upon the Court's denial of Defendant's Motion to Enforce Settlement (Doc. #26).

2

when properly signed release is received in our [MCIC's] office" (Doc. #29 at 15-16, Exhibit 5). MCIC included a release that it desired Plaintiffs sign and return to MCIC (Doc. #29 at 14, Exhibit 4). The check stub additionally provided, "proper endorsements are required for all payees" (Doc. #29 at 15-16, Exhibit 5).

On November 29, 2007, Plaintiffs' attorney wrote MCIC a letter, rejecting and returning the $100,000 settlement check because, *inter alia*, Medicare was listed as a payee (*see* Doc. #24-4).[3] Plaintiffs' attorney requested that MCIC issue a check without Medicare listed as a payee, and further indicated that Plaintiffs would resolve the Medicare lien directly with Medicare and would agree to hold MCIC harmless for any Medicare claims (Doc. #24-4). In addition, Plaintiffs' attorney demanded that certain language contained within the release be removed as inappropriate (Doc. #24-4, Doc. #29 at 14, Exhibit 4).

On December 4, 2007, Centers for Medicare & Medicaid Services ("CMS") wrote MCIC a letter indicating Medicare had been advised that MCIC may have been a responsible payer for Plaintiff James Tomlinson's injuries, and that the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2), et. seq., may require MCIC to reimburse Medicare for conditional payments made on behalf of Plaintiff James Tomlinson (*i.e.* payments made by Medicare prior to payments made by MCIC) (Doc. #24-5 at 3-4).

On December 7, 2007, MCIC wrote to Plaintiffs' attorney and stated that because Medicare had a lien on settlement proceeds and because the Medicare Secondary Payer Act ("MSPA") and Code of Federal Regulations provide that MCIC may be responsible for Medicare reimbursement despite any payment by MCIC to Plaintiffs, MCIC would not rely

---

[3]Medicare paid certain benefits on behalf of Plaintiff James Tomlinson, and therefore, would likely be entitled to a lien against a portion of any settlement proceeds paid to Plaintiff (*see* Doc. #24-6 at 3-8).

on a promise (hold-harmless agreement) from Plaintiffs to satisfy the Medicare lien (Doc. #24-5 at 1-2). MCIC offered to reissue the check as previously issued or to issue a check directly to Medicare for the amount of the lien once MCIC received documentation from Medicare stating the exact amount of the lien (Doc. #24-5). MCIC included a new release that omitted some, but not all, of the language Plaintiffs' attorney struck from the prior release (Doc. #29 at 17, Exhibit 6). Plaintiffs did not respond to the aforementioned correspondence, and on December 14, 2007 Plaintiffs filed the instant lawsuit against Defendant (Doc. #1). On January 29, 2009, Defendant filed the instant Motion(s) to Enforce Settlement and For Dismissal (Docs. #24, #26).

### III. Analysis

The issue before the Court is whether an enforceable settlement agreement was formed between the parties. In his Motion to Enforce Settlement (Doc. #26), Defendant argues that all the essential terms of the proposed settlement were agreed upon once MCIC tendered a check for Defendant's policy limits of $100,000 (made payable to Plaintiffs, Plaintiffs' attorney, and Medicare) because Plaintiffs demanded payment of Defendant's insurance policy limits and MCIC complied (Doc. #26 at 1-3). Defendant supports his argument by claiming the settlement agreement was not invalidated because MCIC, "determined it could not violate federal law by not taking responsibility for protecting Medicare's lien as the [Medicare] Secondary Payer Act requires" (Doc #26 at 1-3). Defendant's argument is not persuasive for the reasons that follow.

1. **No Settlement Agreement was Consummated Between the Parties Because No Meeting of the Minds Ever Occurred Regarding Material Terms of the Proposed Agreement**

As a preliminary matter, the Court would point out that Defendant's instant motion does not mention the fact that MCIC submitted a second proposed release to Plaintiffs after Plaintiffs' attorney expressed concern over (and struck) certain portions of the release language contained within the first proposed release (*see* Docs. #24, #26; *see also* Doc. #29 at 14, Exhibit 4). Defendant merely presents that all essential terms of the proposed settlement were accepted once MCIC agreed to pay its insured's policy limits and tendered a check for that amount (Doc. #26 at 1-3). Defendant, however, fails to address the parties' dispute over the proposed release language and their exchange of correspondence regarding the same (Docs. #24, #26). Defendant cites case law regarding the enforceability of settlement agreements and the need for a meeting of the minds as to **only** the essential terms of a settlement agreement in order to be enforceable; however, Defendant merely cites the law and does not apply the law to all of the pertinent facts relevant to the resolution of the instant motion (Doc. #24 at 8).

Federal courts have inherent authority to summarily enforce settlement agreements entered into by litigants in a pending case. *Ford v. Citizens & So. Nat. Bank, Cartersville*, 328 F.2d 1118, 1121 (11th Cir. 1991). Additionally, this Court must look to Florida law when deciding whether the parties reached a settlement agreement that is enforceable. *BP Products North America, Inc. v. Oakridge at Winegard, Inc.*, 469 F. Supp. 2d 1128, 1133 (M.D. Fla. 2007).

In Florida, settlement agreements are governed by the law of contracts. *See Williams v. Ingram*, 605 So.2d 890, 893 (Fla. Dist. Ct. App.1992). In a case almost directly on point to the instant matter, the First District Court of Appeal of Florida (the "First DCA") held: (1) the parties' dispute over language contained in a proposed settlement release by an insurance company constituted a lack of assent to an essential term of the parties' proposed settlement agreement; (2) the insurer's tender of a settlement check within the time limits stated in the offer did not constitute completion of the settlement agreement; and (3) the insurer's subsequent submission of releases without objectionable terms was a new offer that the plaintiffs in that case were not obligated to accept. *Nichols v. The Hartford Insurance Company of the Midwest*, 834 So.2d 217, 220 (Fla. Dist. Ct. App. 2002).

In *Nichols*, the plaintiffs were injured when their vehicle was struck by a vehicle insured by the Hartford Insurance Company of the Midwest (the "Hartford"). *Id.* at 218. The plaintiffs' attorney wrote a demand letter to the Hartford for its insured's policy limits. *Id.* at 218-19. The Hartford responded with settlement checks and written releases. *Id.* at 218-19. The plaintiffs' attorney objected to the language in the releases and the Hartford responded with releases that omitted **all** of the language the plaintiffs found objectionable. *Id.* at 219. The plaintiffs did not respond to the new releases and the Hartford filed a declaratory action to enforce the settlement agreement between the parties. *Id.* The trial court entered an order granting summary judgment in favor of the Hartford and the plaintiffs appealed. *Id.*

On appeal, the First DCA determined the objectionable release language (an indemnification clause) was an essential term of the proposed settlement agreement and that there was no meeting of the minds between the parties because said language was

not agreed upon. *Id.* at 219-20. The Hartford argued that the tender of the settlement checks constituted completion of the settlement agreement despite the fact the parties disagreed about the indemnification language. *Id.* at 220. The First DCA, however, found the mere tender of the checks did not consummate the settlement agreement because, *inter alia*, the Hartford conditioned the cashing of the settlement checks on the parties mutual assent to the terms of the proposed releases. *Id.* at 220.

The Hartford further argued that the plaintiffs' failure to respond after the Hartford removed the objectionable language from the releases indicated assent to the revised release language. *Id.* The First DCA concluded, however, that the Hartford's removal of the indemnification language constituted a new offer, and that the plaintiffs were not obligated to accept the new offer. *Id.*

In the instant case, the Court finds there was no meeting of the minds with regard to the alleged settlement agreement. As an initial matter, the Court finds the terms of the release to be an essential element of any proposed settlement. Plaintiffs' attorney expressed concerns about the proposed release language in the first release, and the second release submitted by MCIC omitted some, but not all, of the language Plaintiffs' attorney's struck from the first release.[4] As in *Nichols*, the submission of the second proposed release constituted a counteroffer, which Plaintiffs were not obligated to accept. *See Id.*

---

[4]Plaintiffs did not want to agree to a release that reserved for Defendant the right to sue Plaintiffs for Defendant's injuries or property damage (Doc. #29 at 6).

7

Moreover, Plaintiffs objected to MCIC's insistence on the inclusion of Medicare as a payee on the settlement check (Doc. #29 at 2, 7).[5] The Court finds this was an essential term of the agreement since Plaintiffs aver they wanted to resolve any Medicare liens on their own accord (*see* Doc. #29 at 17). Plaintiffs offered to sign a hold harmless agreement with MCIC (Doc. #24-4). This proposition was rejected by MCIC in its December 7, 2007 letter to Plaintiffs' attorney (Doc. #24-5). The Court finds it readily apparent that the parties were engaged in ongoing negotiations regarding the inclusion, or lack thereof, of Medicare as a payee on the settlement check, and that no meeting of the minds ever occurred regarding this point of contention between the parties.

Consequently, Defendant's argument that all essential terms of the settlement demand were accepted when MCIC tendered a check for its insured's policy limits necessarily fails—especially in light of the fact the check stub stated, "payment will clear when properly signed release is received in our [MCIC's] office" (Doc. #29 at 15, Exhibit 5).

The Court finds the mere tender of a settlement check by MCIC did not constitute an acceptance of the settlement demand that would have bound the parties—primarily because payment by MCIC was conditioned upon Plaintiffs agreeing to be bound by MCIC's proposed release. The proposed release submitted by MCIC contained language that Plaintiffs' attorney deemed inappropriate, and Plaintiffs' attorney struck said language from the document (Doc. #29 at 14). MCIC responded by deleting some, but not all, of the language objected to by Plaintiffs (Doc. #29 at 17). Accordingly, the Court finds MCIC made a counteroffer to Plaintiffs when it submitted the second proposed release, and

---

[5]The merit of Defendant's claim that MCIC was required by federal law to include Medicare on the settlement check is discussed *infra*.

Plaintiffs were not obligated to accept this counteroffer. *See Nichols,* 834 So.2d at 220

Here, unlike the situation in *Nichols* where the insurance company removed **all** of the language the plaintiffs' attorney found inappropriate, MCIC only removed some of the language Plaintiffs found inappropriate; therefore, the Court finds an even stronger argument exists for determining MCIC's submission of a second proposed release reveals that negotiations were ongoing, and that there was never a meeting of the minds between the parties regarding an essential element of the proposed settlement agreement.

Based on the foregoing, the Court finds the second release submitted to Plaintiffs by MCIC was a counteroffer that Plaintiffs were not obligated to accept. The Court additionally finds that the parties dispute over whether Medicare should have been listed as a payee on the settlement check was a dispute over an essential term of the agreement, and that negotiations over this issue were ongoing prior to Plaintiffs filing suit. Accordingly, the Court finds no enforceable settlement agreement was ever consummated between the parties.

  **2.** **Defendant Misconstrues the Medicare Secondary Payer Act and the Code of Federal Regulations**

As previously stated, Defendant supports his argument by claiming the alleged settlement agreement was not invalidated when MCIC, "determined it could not violate federal law by not taking responsibility for protecting Medicare's lien as the [Medicare] Secondary Payer Act requires" (Doc #24 at 3). It appears that Defendant is arguing MCIC was required by law to list Medicare as a payee on the settlement check and that, because MCIC had no option other than to include Medicare as a payee, Plaintiffs were bound to accept the settlement check with Medicare listed as a payee (*see* Doc. #26 at 1-3). This

argument is without merit for the reasons that follow.

Defendant references the Medicare Secondary Payer Act ("MSPA"), which provides that an insurer shall reimburse Medicare for any payments it has made to a beneficiary if the insurer had a responsibility for making such payments (Doc. #24 at 3-7). Review of the MSPA and the relevant provisions of the Code of Federal Regulations reveals that an insurer **may** be obligated to reimburse Medicare in certain instances; however, insurers do not have an affirmative legal duty to make direct payment to Medicare in all instances, as Defendant suggests.

To illustrate, 42 C.F.R. § 411.24 states in pertinent part:

(h). Reimbursement to Medicare. If the beneficiary or other party receives a primary payment,[6] the beneficiary or other party must reimburse Medicare within 60 days.

(i). Special Rules.

(1) In the case of liability insurance settlements and disputed claims under employer group health plans, workers' compensation insurance or plan, and no-fault insurance, the following rule applies: **If Medicare is not reimbursed as required by paragraph (h) of this section, the primary payer must reimburse Medicare even though it has already reimbursed the beneficiary or other party**.

(2) The provisions of paragraph (i)(1) of this section also apply if a primary payer makes its payment to an entity other than Medicare when it is, or should be, aware that Medicare has made a conditional primary payment.

42 C.F.R. § 411.24(h), (i)(1)-(2) (*emphasis added*).

---

[6] A primary payer is any entity that is or was required or responsible to make payment with respect to an item or service (or any portion thereof) under a primary plan. These entities include, but are not limited to, insurers or self-insurers, third party administrators, and all employers that sponsor or contribute to group health plans or large group health plans. 42 C.F.R. § 411.2.

10

As set forth above, federal law does not mandate that a primary payer (or insurer) make payment directly to Medicare; however, an insurer may be liable to Medicare if the beneficiary/payee does not reimburse Medicare for any amounts owed to Medicare within sixty (60) days, *supra*.

As stated in its letter to Plaintiffs' attorney, MCIC was concerned that Plaintiffs would not reimburse Medicare and that MCIC would remain liable to Medicare regardless of whether it paid Plaintiffs (Doc. #24-5). Notwithstanding Plaintiffs' attorney's offer to sign an agreement that would hold MCIC harmless for any Medicare liens, MCIC insisted that Medicare be included as a payee on the settlement check (*see* Docs. #24-4; #24-5).

Contrary to Defendant's assertion, MCIC would not have violated federal law if it omitted Medicare from the settlement check. MCIC's decision list Medicare as a payee on the settlement check may have been in MCIC's best interest; however, MCIC was not required by federal law to include Medicare on the settlement check. The fact the parties were in dispute over this issue supports Plaintiffs' argument that there was never a meeting of the minds regarding the manner in which payment was to be tendered to Plaintiffs.

### 3. Amendment of Defendant's Affirmative Defenses Would be Futile

Defendant additionally moves the Court to allow him to amend his answer and affirmative defenses to add the affirmative defense of accord and satisfaction (Doc. #38). The Court, having found no settlement agreement was ever consummated between the parties, finds said motion is due to be denied as futile.

Defendant cites *Taylor v. Florida State Fair Authority*, 875 F.Supp. 812, 814 (M.D. Fla. 1995) (*citing Foman v. Davis*, 371 U.S. 178 (1962)) for the proposition that a court should deny leave to amend a pleading only when: (1) the amendment would be prejudicial

to the opposing party; (2) there has been bad faith or undue delay on the part of the moving party; or (3) an amendment would be futile (Doc. #27 at 5). As stated herein, the Court has found no enforceable settlement agreement was reached between the parties; therefore, amendment of Defendant's affirmative defenses to include the defense of accord and satisfaction would be futile.

## IV. Conclusion

As stated herein, it is hereby **ORDERED**:

1. Defendant's Motion(s) to Enforce Settlement and for Dismissal (Docs. #24, #26) are **DENIED**.

2. Defendant's Amended Motion to Amend Affirmative Defenses (Doc. #38) is **DENIED as futile**.

**DONE AND ORDERED** at Jacksonville, Florida this  24th  day of April, 2009.

Copies to all counsel of record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge