IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NUMBER: 3:07-CV-1180-J-TEM

JAMES E. TOMLINSON and DARLENE
TOMLINSON, his wife,

      Plaintiffs,

vs.

WILLIAM J. LANDERS,

      Defendants.

_____/

### PLAINTIFFS' FIRST MOTION IN LIMINE AND MEMORANDUM OF LAW

COME NOW the Plaintiffs, **JAMES E. TOMLINSON and DARLENE TOMLINSON,**

**his wife,** by and through their undersigned attorneys, and move in limine to exclude the following

from being mentioned in *Voir Dire*, Opening or Closing Statements, and/or introduction into

evidence, or referred to in any way at the time of trial:

1.     **Defendant's *Fabre* expert, Rowland Lamb, should be precluded from testifying that WRONG WAY, DIVIDED HIGHWAY and YIELD and ONE-WAY signs should have been placed at the scene of the accident, upon the grounds that his two Rule 26 reports and deposition do not render the opinion that the failure to have these signs in the location where the accident occurred was a breach of the standard of care.**

    A.     Defendant's expert, Rowland Lamb, has prepared two Rule 26 reports and has given

a deposition in this case. In the Rule 26 report dated March 25, 2009, (**Exhibit "A"** hereto), Mr.

Lamb's opinions begin on page 3, and are delineated by "bullet points" and the word "opinion".

Under the second opinion, Mr. Lamb states the following:

> •     The placement of DO NOT ENTER, WRONG WAY, ONE-WAY and DIVIDED HIGHWAY signs would have *mitigated*

1

*any confusion* and uncertainty while providing clear and concise information to Mr. Landers thus allowing him the full opportunity to correctly enter the north bound lanes of Blanding Boulevard.

Mr. Lamb explained the above opinion during his deposition taken by Plaintiffs on June 10, 2009.  After quoting the above stated opinion on page 96, line 21 - 97/1, Mr. Lamb was asked the following questions and gave the following answers:

> Q.    The second opinion is that the placement of do not enter, wrong one, one way and divided highway signs would have mitigated any confusion and uncertainty while providing clear and concise information to Mr. Landers thus allowing him the full opportunity to correctly enter the northbound lanes of Blanding Boulevard.
>
> Now, you don't say here that these were required so that was not part of your Rule 26 opinion; is that correct?
>
> A.    Let me see.  I am just looking at all my opinions.  Well, I don't state it there; but, based on the MUTCD the do not enter sign was required.
>
> Q.    All right.  So you would agree that it was not part of your Rule 26 Report or your Affidavit that it was required to have the do not enter, wrong way, one way and divided highway signs; but, your opinion was only that it would have mitigated any confusion and uncertainty; is that correct?
>
> A.    That is correct, that the language of requirement does not fall in my opinion.
>
> Q.    And you did **not opine** in your Rule 26 Report or your Affidavit that DOT or Clay County **deviated from the standard of care** by failure to have those signs, do not enter, wrong way, one way and divided highway; is that correct?
>
> A.    The report does not state that specifically, that's correct.

(Lamb depo, p. 96/21 - 97/22).

B.     After the deposition, Mr. Lamb filed a new Rule 26 Report dated June 18, 2009 (**Exhibit "B"** hereto).  His opinions begin on page 3 under paragraph (A).  He adds as his second opinion that a "DO NOT ENTER" sign was required at the scene, but re-states the opinion discussed above verbatim:

> •     The placement of DO NOT ENTER, WRONG WAY, DIVIDED HIGHWAY and YIELD signs along with the correct placement of ONE WAY signs would have mitigated any confusion and uncertainty while providing clear and concise information to Mr. Landers thus allowing him the full opportunity to correctly enter the north bound lanes of Blanding Boulevard.  (p. 4)

Nowhere in either Rule 26 Report nor in his deposition does Mr. Lamb render an opinion that the failure to have WRONG WAY, DIVIDED HIGHWAY, YIELD and ONE WAY signs fell below the standard of care in this case.  He does add the opinion that a DO NOT ENTER sign is required, which was not part of his first Rule 26 Report.  Otherwise, Mr. Lamb states only the speculative conclusion that this collection of signs would have *mitigated any confusion and uncertainty,* and would have allowed Mr. Landers to correctly enter the northbound lanes of Blanding Boulevard.  This testimony does not rise to the level of an opinion that either of these *Fabre* defendants, FDOT or Clay County, deviated from the standard of care by failing to have these signs at the intersection of Alligator Boulevard.  This is so even after the issue was specifically explored on deposition, and a second Rule 26 Report was filed that would have given Mr. Lamb the opportunity to clarify his opinion.

The Florida Supreme Court clarified its ruling in ***Fabre v. Marin***[1] as requiring a defendant who seeks to put a non-party's name on a jury verdict to prove that the non-party was negligent.

_____

[1]  623 So.2d 1182 (Fla. 1993).

The Court held in *Nash v. Wells Fargo Guard Services, Inc.,*[2] as follows:

> [4] In addition to the pleading requirement, the defendant has the burden of presenting at trial that the nonparty's fault contributed to the accident in order to include the nonparty's name on the jury verdict. See *W.R. Grace & Co.-Conn v. Dougherty,* 636 So.2d 746, 748 (Fla. 2d DCA) (without evidence of the nonparty defendant's negligence, the named defendant has "not satisfied the foundation necessary for a jury to receive jury instructions and a verdict form to decide the case pursuant to section 768.81, Florida Statutes (1991) and *Fabre*")....

It is clear from Mr. Lamb's deposition that he does not know what signs FDOT designed to be at the intersection, and does not know what signs were there on the date of the accident (February 24, 2007). The following testimony was given in his deposition[3]:

> Q.    Okay. And you haven't examined any documents that would tell you what was there at the time of this accident in February of 2007, have you?
>
> A.    Well, now I have looked at some documents, and I don't know that they actually told me so much as what was there as to what has been replaced. These are maintenance documents.

(p. 28, l. 10 - 16).

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

> Q.    All right. But you don't know what was there on the day of the accident, correct?
>
> A.    That's correct.

(p. 29, l. 3 - 5)

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

---

[2]  678 So.2d 1262, 1264 (Fla. 1996).

[3]  All deposition excerpts of Rowland Lamb, P.E. quoted in this Motion are attached as **Composite Exhibit "C"**.

4

Q.      Now, I want to be clear.  Since you don't know what signs were there on the day of the accident at Alligator or at Rosemary you don't know whether or not those signs were adequate; am I correct?

MR. STURGESS: Object to the form.

A.      I'll answer it this way.  I don't know if there were any other signs there other than the ones that I witnessed on the day of my inspection.

BY MR. STRIPLING:

Q.      So you don't know if the signs were adequate on the day of the accident, correct?

MR. STURGESS: Object to the form.

A.      I hate to go along with you on that because I believe that the signs that were there on the day of my inspection are the same ones and there were no other ones there at the time of the accident, **but I don't know that.  I have no proof** at this point other than maintenance records that certainly show there were none ever repaired or replaced so I have to believe that there weren't.

I mean, to me that is substantial to show that there were no other signs out there because I have maintenance records that show that there were none that were removed, repaired or replaced.  So based on that the signs that were there at the point of my inspection were there at the time of the accident.

BY MR. STRIPLING:

Q.      All right.  You know what signs I assume, correct me if I'm wrong, do you know what signs (sic, were) planned to be installed at Alligator and State Road 21?

A.      When you say planned?

Q.      Designed to be there.

A.      **I've never seen the design plans for that intersection.**

5

Q.    Okay.  Any you've never requested those; is that correct?

A.    That is very possibly correct.

(p. 30, l. 7, through p. 31, l. 18).

* * * * * * * * * * * * * * * * *

Q.    Okay.  And you don't have any as built plans either, do you, to show what the plan was at that intersection regarding signs as it was actually installed and built; is that correct?

A.    That's correct.

(p. 32, l. 12 -16)

* * * * * * * * * * * * * * * * *

Q.    That is what it was designed for, for there to be a divided highway sign below that stop sign on Alligator?

A.    As I've already said, I have not seen the design plan so I don't know what it was designed for.

(p. 39, l. 2 - 6)

* * * * * * * * * * * * * * * * *

Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993), govern the admissibility of expert testimony.  If the testimony will assist the trier of fact, it is admissible if (1) it is based upon sufficient facts or data, (2) the testimony is the product of reliable principals and methods, and (3) the witness has applied the principals and methods reliably to the facts of the case.  *Mercer v. South Bend Snowmobiler's Club, Inc.,* 2006 W.L. 3804884 (N.D. Ind.).

*Mercer*, *Id.,* was a case involving the testimony of a traffic engineer (albeit in the context of a snowmobile trail crossing a railroad track), where in the traffic engineer's opinions were excluded as not being based upon any scientific, technical or specialized knowledge.  The court

6

states that,

> The Court also excluded Neese's Opinion 1.4 because it was not the
> subject of a proper expert opinion. Neese has not provided any basis
> for his opinion that the Snowmobiler's Club should have warned the
> railroad that the crossing was used by snowmobilers. Furthermore,
> this opinion is not based on any scientific, technical or specialized
> knowledge. In fact, according to the report, it's not based on
> anything. Neese did not cite to any treatise or manual for his opinion
> that the railroad should have been warned. A conclusion without an
> analysis providing an accepted premise or reliable principles is
> simply not an appropriate expert opinion.

Similarly, Mr. Lamb's above stated opinion that the signs would have "mitigated any
confusion and uncertainty", and would have allowed Mr. Landers the full opportunity to enter the
northbound lanes of Blanding Boulevard, is not founded upon any requirement that the signs be
placed there, and that the standard of care was breached in this case, according to his first Rule 26
Report and deposition. The second Rule 26 Report attempts to bolster the other one by opining that
all of the signs are required in certain circumstances; but fails to indicate if the signs were required
under the circumstances of the intersection of S.R. 21 and Alligator Boulevard. In no event, does
the Report state that the *Fabre* defendants breached the standard of care by failing to have the signs
at the intersection.

The testimony in Mr. Lamb's deposition states he did not review the design plans or "as-
built" plans of FDOT for the signing at this intersection; and he does not know what was at the
intersection at the time of the accident. He only gives his subjective belief or speculation that these
additional signs "would have mitigated any confusion and uncertainty", and would have allowed Mr.
Landers an opportunity to get into the northbound lanes of Blanding Boulevard. It is pure
speculation that these additional signs would have warned Mr. Landers, as an individual; but this

was Mr. Lamb's testimony, even though he had not even read Mr. Landers' deposition.

> Q.     All right. Have you read his (Landers') testimony, his deposition testimony?

> A.     I'm trying to remember if I read his. I know that I read his son's. This is embarrassing, I ought to know that. No sir, I have not.

(p. 43, l. 21 - 25).

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

> Q.     Okay. You have no way of knowing what Mr. Landers saw or observed at the time of this accident, do you?

MR. STURGESS: Object to form.

> A.     Well, at the time of the accident, at the moment of the accident?

BY MR. STRIPLING:

> Q.     And immediately preceding.

> A.     Well, I don't know everything. You know, obviously, he doesn't remember and I wasn't in his head at the time so I'm not sure what he was perceiving.

> Q.     All right. And so you don't know what he was doing at the time of the accident, do you?

MR. STURGESS: Object to the form.

> A.     I understand he was driving his car.

BY MR. STRIPLING:

> Q.     All right. You don't know where he looked or if he stopped at the stop sign; is that right?

A.      I have no indication one way or another.

(p. 45, l. 1 - 19).

* * * * * * * * * * * * * * * * * *

In **_Morrison v. Stevenson_**, 75 Fed. R. Evid. Serv. 1098 (S.D. Ohio 2008), the district court reviewed the trial court's inherent authority to rule on motions on limine, even though the rules do not specifically address such motions.  The case involved exclusion of expert testimony, and held that trial judges must perform a "gate-keeping role" when considering the admissibility of expert testimony, so as to avoid delay and insure an even-handed and expeditious trial.  Specifically, the case dealt with the exclusion of speculative theories of causation, just as in the instant case where Defendant's _Fabre_ expert is attempting to opine what road signs would have guided Mr. Landers onto the right path; but cannot say that it was a breach of the standard of care for the _Fabre_ defendants not to have used additional signs.  The witness cannot even tell us what signs were designed to be there, or what signs were there at the time of the accident.   Therefore, the Court should exclude this highly speculative and prejudicial testimony.

2.      **The Court should exclude Mr. Lamb's opinion that it was foreseeable that Defendant, Landers would proceed north into the southbound lanes of S.R. 21.**

In his Rule 26 Report, Defendant's expert, Rowland Lamb, has stated the following opinion:

- **OPINION**

  - It is reasonably foreseeable that a motorist such as Mr. Landers, turning left from Alligator Boulevard onto Blanding Boulevard at night would enter the southbound lanes without knowledge of their mistake.

(R. 26 report, 6-18-09, p. 4).

As stated above, Mr. Lamb has no knowledge of what Mr. Landers was thinking at the time

of the accident. It is pure speculation for him to opine that Defendant, Landers, could reasonably

enter the southbound lanes of State Road 21, when he cannot testify to what signs were present at

the time of the accident, or what signs were even designed or installed by either *Fabre* defendant

at that intersection. The testimony completely lacks any probative value and is highly prejudicial

to Plaintiffs. ***Morrison, Id.***

3.    **The Court should exclude any testimony or photographs regarding the absence of a DIVIDED HIGHWAY sign on Alligator Boulevard at State Road 21 at the time of Mr. Lamb's scene inspection on March 31, 2009.**

On page two of Mr. Lamb's Rule 26 Report (06-18-09), he attempts to imply that the signs

present at the time of his scene inspection, 3-31-09, were the same signs present at the time of the

accident (02-24-07), which was over two (2) years before Mr. Lamb made his inspection. The report

contains the following "bullet points" on page 2:

> •    At the intersection of Alligator Boulevard and Blanding boulevard, the following signage **is** in place:
> > •    Stop sign for east bound traffic on Alligator Boulevard.
> > •    Fifty-five (55) mile per hour speed limit sign in the median facing south.
> > •    Fifty-five (55) mile per hour speed limit sign on the shoulder of the north bound lanes (located immediately east of Alligator Boulevard).
> > •    Three blank retro-reflective amber diamond shaped panels and a "ONE WAY" sign on the east side of Blanding Boulevard across from Alligator Boulevard.

Mr. Lamb's file contains various color photographs of the intersection of Alligator Boulevard

and Blanding Boulevard (State Road 21), which were taken at the time of his scene inspection two

(2) years after the accident. Contrary to what is shown in these photographs and what is cataloged

in his Rule 26 Report, the evidence shows that FDOT designed and installed a DIVIDED

HIGHWAY sign on the same post as the STOP sign for eastbound traffic on Alligator Boulevard

at S.R. 21.  This is verified by Plaintiffs' *Fabre* rebuttal expert, Jeffrey D. Armstrong, P.E., whose

Rule 26 Report is of record in this case (Document 75).  On page four (4), paragraphs 3 and 4, Mr.

Armstrong states as follows:

> 3.  New signs were installed at the intersection of Alligator Blvd. and
> Blanding Blvd. in 2005 and 2006 as part of Florida Department of
> Transportation Financial Project ID 20811-2-52-01.  The project
> included a STOP sign with a Divided Highway sign mounted beneath
> th STOP sign on Alligator Blvd. at the intersection of Blanding Blvd.
> This design complied with the 2004 *FDOT Design Standards* and the
> 2003 *MUTCD*.

> 4.  There is photographic evidence to indicate that a Divided
> Highway sign was mounted beneath the STOP sign on Alligator
> Blvd. as called for in the plans, following the roadway signing project
> that was performed in 2005 and 2006.

Attached hereto is Figure 17  (**Exhibit "D-1"**) of Mr. Armstrong's Report, showing the

DIVIDED HIGHWAY sign mounted beneath the STOP sign, and Figure 18 (**Exhibit "D-2"**),

showing the back side of the sign looking from Blanding Boulevard in a westerly direction towards

Alligator Boulevard.  Although not yet transcribed, Mr. Armstrong testified in his deposition that

a "watermark" can be seen on the photograph if the section is zoomed in.  Close inspection reveals

a date of 2007 for this photograph, verifying its presence in close proximity to the accident date.

Since the accident happened in February of 2007, it can reasonably be inferred that the sign was

there at that time.  It is Defendant's burden to prove otherwise, which has not and cannot be done.

Also attached to Mr. Armstrong's Rule 26 Report are the design plans for S.R. 21 at

Alligator Boulevard and at Rosemary Street, shown on Figure 26 (**Exhibit "D-3"**).  Both

intersections were designed to have a DIVIDED HIGHWAY sign mounted beneath the STOP sign.

An enlargement of this area is contained in Figure 27 of the Report (**Exhibit "D-4"**).

Since Mr. Lamb has no knowledge of what signs were present at the time of the accident, he should not be permitted to speculate that the DIVIDED HIGHWAY sign was missing. This is especially true in light of evidence to the contrary showing that the sign was there at the time of the accident. Therefore, the Court should exclude evidence of the missing DIVIDED HIGHWAY sign at the time of Mr. Lamb's scene inspection two (2) years after the accident. This would confuse and mislead the Jury, and lacks relevancy and any probative value. Furthermore, the admission of such evidence would be highly prejudicial to Plaintiffs. (See, *Federal Rules of Evidence 401, 402, 403, 702* and *Morrison, Id.).*

### 4.    The crash reports of other accidents in the vicinity of Alligator Boulevard should be excluded.

The Defendant has produced a collection of Florida Traffic Crash Reports for other accidents both before and after the instant accident, in the vicinity of the accident scene, and at Alligator. Some are before but most are after this accident. There is no showing that they are similar. These other accident reports were not relied upon by Mr. Lamb in the formulation of his opinions. (Lamb depo, p. 66, l. 9-21); and are irrelevant and should be excluded based upon *Federal Rules of Evidence 401, 402 and 403.*

### 5.    The Court should exclude any evidence pertaining to the injuries sustained by Defendant, William J. Landers, as being irrelevant.

The issues in this case involve only the liability of Defendant, Landers, damages to Plaintiff, JAMES E. TOMLINSON and the *Fabre* defense. There is no issue regarding the injuries sustained by William J. Landers in the accident, except that he has no recall of the accident. Evidence bearing upon his other injuries would only mislead the Jury and engender sympathy for the Defendant on an issue which is not relevant. Any possible relevance is outweighed by the prejudicial affect of

such evidence being admitted. Therefore, the evidence should be excluded under *Federal Rules of Evidence 401, 402 and 403.*

STRIPLING & STRIPLING, P.A.

Robert O. Stripling, Jr.
**Florida Bar Number: 102810**
102 Northwest Second Avenue
Post Office Box 1287
Gainesville, FL 32602
352-376-8888
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the above document has been served by electronic filing by the Court's CM/ECF system this _6th_ day of July, 2009, to the following:

**Robert H. Sturgess, Esquire**
Marks Gray, P.A.
1200 Riverplace Boulevard, Suite 800
Jacksonville, FL 32207
*Attorney for Defendant*

Robert O. Stripling, Jr., Esquire

13